UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LISA H.-A., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. C20-5524-BAT <br><br> **ORDER AFFIRMING THE COMMISSIONER'S DECISION** |

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the ALJ erred by (1) finding she can perform past work, although a prior ALJ decision found she could not; (2) relying on vocational expert ("VE") testimony that conflicts with the Dictionary of Occupational Titles ("DOT"); (3) entering findings at steps three and four and crafting a residual functional capacity ("RFC") assessment that fail to account for all of her limitations; and (4) failing to account for Plaintiff's amendment of the alleged onset date. Dkt. 20 at 1.  As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 58 years old, has a bachelor's degree and training as a pharmacy technician, and her previous jobs include pharmacy technician. Tr. 60-61, 219.  In April 2014,

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 1

she applied for benefits, alleging disability as of October 10, 2013.  Tr. 191-94.  Her application was denied initially and on reconsideration.  Tr. 123-29, 131-35.  At an administrative hearing, Plaintiff amended her alleged onset date to August 10, 2014.  Tr. 689.  The ALJ conducted hearings in September 2015 and January 2016 (Tr. 47-97), and subsequently found Plaintiff not disabled.  Tr. 31-41.  The Appeals Council denied Plaintiff's request for review (Tr. 1-6), and Plaintiff appealed to this court, which reversed the ALJ's decision and remanded for further administrative proceedings.  Tr. 751-62.  After remand hearings (Tr. 680-725), a different ALJ subsequently found Plaintiff not disabled.  Tr. 653-71.  Plaintiff now seeks judicial review of the ALJ's decision.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:**  Plaintiff did not engage in substantial gainful activity between her original alleged onset date and her date last insured ("DLI") of December 31, 2018.

**Step two:**  Through the DLI, Plaintiff had the following severe impairments: affective/bipolar disorder and degenerative disc disease.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[2]

**RFC:**  Through the DLI, Plaintiff could perform light work with additional limitations: she could occasionally reach overhead.  She could understand, remember, and carry out instructions and tasks of occupations with a specific vocational preparation level of 1-3.  She could have occasional interaction with co-workers and supervisors, and infrequent and superficial interaction with the general public.

**Step four:**  Plaintiff could perform her past work as a pharmacy technician.

Tr. 653-71.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 2

**DISCUSSION**

**A.     Alleged Onset Date**

Plaintiff amended her alleged onset date to August 10, 2014, at an administrative hearing. *See* Tr. 689.  The ALJ acknowledged this amendment early in the decision (Tr. 654), but then adjudicated the period running from her original alleged onset date (October 10, 2013) through the DLI of December 31, 2018.  *See* Tr. 671. Plaintiff bears the burden of establishing the ALJ harmfully erred and has failed to do so here. There is nothing showing the ALJ excluded evidence relevant to Plaintiff's amended onset date by utilizing a mistaken onset date. Although Plaintiff suggests the ALJ erred in relying on evidence from 2013, she has not shown that the 2013 evidence is wholly irrelevant to an understanding of Plaintiff's functioning since August 10, 2014 the alleged onset date.  *See* Dkt. 20 at 17-18.  While medical evidence that predate the alleged onset date is of limited value, *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir.2008), "[t]he ALJ must consider all medical opinion evidence" and that can include evidence before the onset date. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.2008).  Because the ALJ's decision discusses the evidence that post-dates Plaintiff's amended alleged onset date as well, and does not give undue weight to the 2013 evidence, *see* Tr. 656-70, the Court finds Plaintiff has failed to meet her burden to show harmful error flowing from the ALJ's failure to account for Plaintiff's amendment of her alleged onset date.

**B.     Residual Functional Capacity**

Plaintiff argues the ALJ erred in failing to account for her neck impairment, back impairment, hand paresthesia, migraines, and mental impairments at step three and in the RFC assessment.  Dkt. 20 at 5-17.  Here argument also raises challenges to the ALJ's assessment of Plaintiff's testimony as well as various medical opinions.

### *1.  Neck and back impairments*

Plaintiff argues various reports and treatment notes mention pain and numbness resulting from her neck and back impairments. Dkt. 20 at 5-6. She contends the ALJ "fails to include" her hand/finger numbness and tingling "for impermissible reasons, and erroneously concludes the Plaintiff 'does not have' a bilateral upper extremity impairment affecting fine and gross motor manipulations at step three." Dkt. 20 at 6 (quoting Tr. 658). Plaintiff also argues her spinal impairments are worse than the ALJ found. Dkt. 20 at 6-8.

The ALJ found Plaintiff's degenerative disc disease was a severe impairment at step two (Tr. 656), but found at step three the impairment did not meet or equal a listing because the record did not contain evidence satisfying all of the criteria of Listing 1.02 or 1.04, specifically nerve root impingement or compromised spinal cord, or the inability to effectively perform fine and gross motor manipulations. Tr. 658.

Plaintiff disputes the record fails to corroborate nerve root impingement or compromised spinal cord, contending that findings of "severe foraminal stenosis" mean the same thing. Dkt. 20 at 7. But the ALJ acknowledged Plaintiff's severe bilateral foraminal stenosis (Tr. 658), and even if the ALJ could or should have found that this finding was equivalent to nerve root impingement or compromised spinal cord, there are other elements of Listing 1.04 (including neuroanatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and positive straight leg-raising both sitting and supine) that Plaintiff does not show she satisfies. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Thus, Plaintiff fails to establish the ALJ erred in finding she did not meet or equal Listing 1.04.

Likewise, Plaintiff has not shown the ALJ erred in finding she did not meet or equal Listing 1.02. Plaintiff points to various places in the record where she alleged hand/finger

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 4

1  numbness (Dkt. 20 at 5-8), but does not show or argue these reports or findings are equivalent to
2  a finding that Plaintiff has lost the ability to effectively perform gross and fine movements, as
3  required by Listing 1.02.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.  As such, Plaintiff has
4  not established the ALJ erred in finding that she did not meet or equal Listing 1.02.

5        To the extent Plaintiff also argues the ALJ erred in failing to include any RFC limitations
6  resulting from her hand/finger numbness or back pain (Dkt. 20 at 8-11), the ALJ discussed
7  Plaintiff's allegations of disabling limitations in this regard and explained  he found her
8  allegations to be inconsistent with her own statements in her agency paperwork (denying
9  physical limitations in May 2014 (Tr. 253)) along with the many normal findings as to
10 functionality in the medical record.  Tr. 661-63.  Although Plaintiff contends she did not know at
11 the time she completed her paperwork she was required to list every symptom (Dkt. 20 at 10),
12 and that she continued to report symptoms to providers throughout the adjudicated period,
13 Plaintiff fails to establish the ALJ erred in relying on inconsistencies between her allegations and
14 her own statements as well as the many normal findings of providers to discount Plaintiff's
15 allegations of disabling physical limitations pertaining to her degenerative disc disease.  *See*
16 *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ may consider a claimant's
17 inconsistent or non-existent reporting of symptoms); *Carmickle v. Comm'r of Social Sec. Admin.*,
18 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis
19 for rejecting the claimant's subjective testimony.").

20       The Court declines to reweigh the evidence in Plaintiff's favor and finds Plaintiff has not
21 met her burden to show the ALJ harmfully erred in assessing her back and neck impairments.

22

23

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 5

### 2. *Migraines*

The ALJ found Plaintiff's migraines were not a severe impairment at step two because Plaintiff's allegations of migraine frequency and severity were contradicted by the record and the record also showed medication was effective in treating the migraines. Tr. 656-57. The ALJ also found that even if migraines were considered a severe impairment at step two, the record did not establish greater limitations caused by migraines than the ALJ included in the RFC assessment. Tr. 657.

Plaintiff contends the ALJ relied on a single treatment note to discount the severity of her migraines (Dkt. 20 at 11), but this argument mischaracterizes the content of the ALJ's decision. *See* Tr. 656-57 (summarizing multiple treatment notes spanning years). Furthermore, Plaintiff has not shown the evidence established the existence of any limitation caused by her migraines, which the ALJ should have included in the RFC assessment. The ALJ discussed Plaintiff's allegations and explained why he discounted them, and Plaintiff has not shown these reasons are erroneous. *See* Tr. 656-57. Because the ALJ properly considered Plaintiff's alleged limitations caused by her migraines, any error in the ALJ's failure to include migraines at step two would be harmless. *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

### 3. *Mental impairments*

Lastly, Plaintiff argues the ALJ erred in discounting her allegations as to her mental limitations. In finding Plaintiff's mental limitations were less severe than she alleged, the ALJ pointed to (1) normal mental status examinations, (2) treatment notes documenting minimal psychiatric symptoms, and (3) serious symptom flares occurring in the context of lack of compliance with medications or acute stress related to a death in the family. Tr. 664-66. The

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 6

ALJ also discounted certain opinion evidence and lay statements describing mental limitations inconsistent with the record.  Tr. 666-70.

Plaintiff contends the record should be interpreted to support her allegations rather than discount them (Dkt. 20 at 14-17), but the argument rests on an alternative interpretation of the record rather than establishing error in the ALJ's decision.  For example, Plaintiff disagrees that her symptom exacerbation is linked to lack of medication and/or situational stressors, contending the record shows exacerbations "happen whether on or off medication." Dkt. 10 at 14 (citing Tr. 995-1008, 1015-18, 1087-88, 1138-39.)  Plaintiff does not show she was hospitalized for psychiatric symptoms at a time that she was compliant with medications, however, and thus does not show the ALJ erred in finding a link between her hospitalizations and her lack of compliance with medications.  Tr. 665-66.  Further the ALJ did not find medications resolved all of Plaintiff's mental symptoms, and instead included significant mental restrictions in the RFC assessment.  *See* Tr. 660.  Thus, Plaintiff's identification of treatment notes mentioning the existence or report of symptoms even while medication-compliant does not demonstrate the ALJ harmfully erred.

Additionally, although Plaintiff argues the ALJ erred in relying on her lack of medication compliance as a reason to discount her allegations without considering why she failed to comply (Dkt. 20 at 14-15), the ALJ in fact discussed the evidence pertaining to Plaintiff's lack of compliance at length, and concluded that her lack of compliance was volitional rather than caused by her mental impairments.  Tr. 665-66.  Plaintiff has not shown the ALJ erred in these findings.

Plaintiff further challenges the ALJ's assessment of the medical opinions and lay statements, arguing the ALJ erred in relying on one treatment note as evidence Plaintiff

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 7

maintained a normal presentation during that appointment, when many other appointments document abnormal symptoms. Dkt. 20 at 15-17. The argument overlooks the other reasons the ALJ discounted the opinion and lay statements, specifically the normal mental status examinations, the many normal findings contained in multiple treatment notes, and Plaintiff's improvement when compliant with medication. Tr. 668-70. The ALJ thus did not impermissibly rely on one treatment note out of context, as Plaintiff contends.

To the extent Plaintiff argues the ALJ relied on reasons previously rejected in a court remand order to discount the opinion of examining psychiatrist Kathleen Andersen, M.D., Plaintiff overlooks the ALJ's explanation in the current decision. The court remand order suggested that a one-time examination report cannot be discounted simply as based on a one-time examination, particularly because Dr. Andersen reviewed Plaintiff's records. *See* Tr. 759. But the ALJ explained in the current decision that Plaintiff's presentation during Dr. Andersen's evaluation was "drastically different" than her presentation during appointments throughout the relevant period, and emphasized that Dr. Andersen herself highlighted her limited perspective on Plaintiff's functioning. Tr. 668-69 (referencing Tr. 465 ("I interacted briefly with [Plaintiff]."), 475 ("Because of [Plaintiff's] mental state, I was not able to carry out the interview. However, I was asked to provide what information I have about my brief interaction with her."), 480 ("My interactions with her were brief, and it would be difficult to draw diagnostic conclusions.")). The ALJ adequately explained why Dr. Andersen's limited perspective, in conjunction with contrasting treatment notes from throughout the adjudicated period, undermined the reliability of her conclusions. Tr. 668-69. Plaintiff has not shown the ALJ merely reiterated reasoning already rejected in a prior court remand order, or shown the ALJ's reasoning in the current decision was erroneous. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (providing that in

considering the weight to afford a medical opinion, an ALJ may consider the extent to which a medical source is familiar with the other information in a claimant's record).

Plaintiff broadly states the ALJ failed to provide legally sufficient reasons to discount other opinions and lay statements (Dkt. 20 at 16-17), but does not address the ALJ's reasons or explain why they are insufficient. *See* Tr. 668-70. Accordingly, the Court finds that Plaintiff has failed to meet her burden to show harmful legal error in the ALJ's decision with respect to this evidence.

**C.     Past Relevant Work**

In the prior decision, the ALJ found considering Plaintiff's RFC, she could not perform her past work. *See* Tr. 40. That decision was reversed and vacated, and in the current decision, which contains a similar but not identical RFC assessment, the ALJ relied on VE testimony to find Plaintiff can perform her past work as a pharmacy technician. Tr. 670-71.

Plaintiff argues the ALJ erred in the current decision in failing to give *res judicata* effect to the RFC assessment and step-four finding contained in the prior decision. Dkt. 20 at 2-3. This argument is unfounded because the prior ALJ decision was reversed and vacated, and the ALJ on remand held a new hearing and considered an expanded adjudicated period. These facts distinguish this case from the cases cited by Plaintiff, which discuss *res judicata* in the context of a prior administratively final ALJ decision. *See Chavez v. Bowen*, 844 F.2d 691, 692-93 (9th Cir. 1988); *Drake v. Saul*, 805 Fed. Appx. 467 (9th Cir. Mar. 5, 2020). Plaintiff cites no authority suggesting that an ALJ should give *res judicata* effect to a prior decision that has been reversed and vacated, and the Court is not aware of any such authority.

### D. Vocational Expert Testimony

Lastly, Plaintiff argues the ALJ erred in relying on VE testimony at step four without resolving the conflicts between the testimony and the DOT. An ALJ has an affirmative responsibility to inquire as to whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for such a conflict is reasonable. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007).

At the hearing, the ALJ asked the VE whether a person limited to medium work with occasional overhead reaching, with the ability to perform work with a specific vocational preparation level of 3 or less, would be able to perform Plaintiff's past relevant work. Tr. 717. The VE stated a person with that RFC could perform the job of pharmacy technician. *Id*. The ALJ then added a restriction to occasional interaction with coworkers and supervisors, and infrequent and superficial interaction with the general public. Tr. 718. The VE testified the pharmacy technician job would still remain feasible. *See id*. In conclusion, the VE stated his testimony was based on the DOT. Tr. 724.

Plaintiff notes the DOT defines the pharmacy technician job to require frequent reaching, handling, and fingering, and suggests the DOT is therefore inconsistent with the ALJ's finding that Plaintiff is restricted to occasional overhead reaching. Dkt. 20 at 4. But the DOT does not explicitly state or suggest the pharmacy technician job requires frequent *overhead* reaching. *See* DOT 074.382-010, *available at* 1991 WL 646728. In the absence of either a specific statement in the DOT or a logical inference based on the DOT job description, Plaintiff has failed to identify an obvious conflict between the VE testimony and the DOT as to the reaching requirements of the pharmacy technician job. *See Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016) (holding that although the DOT defined a job to require frequent reaching, a

restriction on *overhead* reaching is not necessarily implicated where the need to reach overhead is unlikely or unforeseeable in that particular job).

Plaintiff also argues the VE's testimony was inconsistent with the DOT because a pharmacy technician assists a pharmacist, and thus there is an implied conflict between the DOT and the social restrictions in the RFC assessment.  The DOT does define the pharmacy technician job to require rendering assistance to a pharmacist in carrying out various duties, but it also defines the job to require a "not significant" degree of "taking instructions-helping".  *See* DOT 074.382-010, *available at* 1991 WL 646728.  Furthermore, the VE was asked specifically about the social requirements of the pharmacy technician job and the VE explained that a person with Plaintiff's social restrictions could still perform the job, given its low "people" score.  Tr. 719-21.  Thus, again, Plaintiff has failed to identify an obvious conflict between the VE's testimony and the DOT, and has not shown that the ALJ erred in relying on the testimony in entering step-four findings.

The Court according concludes Plaintiff fails to show the ALJ improperly relied on VE testimony that conflicts with the DOT at step four.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 9th day of February 2021.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge